## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| COMPUMEDICS USA, INC., ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> CAPITAL PARTNERS FINANCIAL GROUP USA, INC., ) <br><br> Defendant. ) | Civil Case No. 5:16-522 |

### MEMORANDUM OPINION

Corporate financer Capital Partners bought two sleep study systems from medical device retailer Compumedics on behalf of two hospitals. Capital Partners claims the hospitals agreed to pay Compumedics directly. But they didn't. So Compumedics sued Capital Partners.

Compumedics now seeks summary judgment for breach of contract. To establish breach of contract, Compumedics must show that a contract existed, that Compumedics satisfied its legal obligations, that Capital Partners didn't, and that Compumedics suffered damages. Capital Partners argues there are disputes of material fact concerning contract formation, Compumedics's performance, and damages.

After reviewing the record, the Court concludes the parties formed a contract, but finds a factual dispute over Compumedics's performance. So without reaching the damages question, the Court will deny summary judgment.

## I. Legal Standard

"[S]ummary judgment is proper if . . . 'there is no genuine issue as to any material fact . . . [and] the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). Once the moving party identifies a valid basis for summary judgment, the opposing party must identify "specific facts showing there is a genuine issue for trial." *Id.* at 323-24 (internal quotation marks omitted) (quoting Rule 56(e)). To succeed, the opposing party must also provide evidence allowing a reasonable factfinder to find in its favor. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014).

## II. Compumedics and Capital Partners contracted to buy two sleep study systems for $97,624.61.

As every first-year law student learns, contracts for sales of goods form through offer and acceptance. *See Walterscheid v. Walterscheid*, 557 S.W.3d 245, 258 (Tex. App. 2018). And as every first-year law student soon realizes, modern commercial arrangements often blur the line separating the two, with businesses swapping forms with different terms before, during, and after a deal.

Under Texas law, "an[y] act that leads the offeree reasonably to believe that assent (i.e. acceptance) will conclude the deal" constitutes an offer. *Axelson, Inc. v. McEvoy-Willis*, 7 F.3d 1230, 1232-33 (5th Cir. 1993) (applying Texas law). For instance, a price quote might be an offer if it remains open for a specified time and contains no other conditions, but it would not be if conditioned on a credit check, final approval, or affirmative acceptance. *See id.* By contrast, a purchase order with no strings attached usually constitutes an offer. *See Toshiba Mach. Co. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 776 (Tex. App. 2005).

Any act assenting to an offer constitutes acceptance: a telephone call, an email, or even shipping a product and sending an invoice after receiving a purchase order. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 198 (Tex. App. 1992). That's true even if the acceptance includes additional or different terms, unless the acceptance is expressly conditioned on those terms. *Id.* at 198-99. Between merchants, those new terms automatically become part of the contract unless the offer foreclosed them, they materially change the contract, or the offeror objects. Tex. Bus. & Com. Code Ann. § 2.207 (West 2018). New terms materially change a contract if they "fail to reflect the meaning and intent of the parties to the agreement." *Associated Sawmills, Inc. v. Peterson*, 366 S.W.2d 844, 848 (Tex. Civ. App. 1963).

Compumedics's exhibits document offer and acceptance for two contracts with Capital Partners. Capital Partners' July 10, 2015 Purchase Order No. 205.502.1 offered $49,270.75 in exchange for immediate shipment and installation of a sleep study system at Spring Central Hospital.[1] *See* ECF No. 99-1. Compumedics accepted on August 27, 2015 when it shipped the system and sent Invoice No. IN 88633. *See* ECF No. 99-3. That invoice lowered the price to $48,793.74 after tax corrections and sales adjustments, and listed twenty standard terms— including a forum-selection and choice-of-law clause—on the back of each page. *Id.* Because Compumedics and Capital Partners are both merchants under § 2.104(a),[2] because the purchase order did not foreclose additional terms, because only the forum-selection and choice-of-law clauses materially change the deal,[3] and because Capital Partners does not claim it objected, the

---

[1] That purchase order followed Compumedics's March 2015 quote which expressly noted it was not an offer, alterable at will, and conditioned on credit approval. *See* ECF No. 99-10.

[2] Section 2.104 defines "merchants" as "a person who deals in goods of the kind," a definition encompassing Compumedics, "or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction," encompassing Capital Partners.

[3] Texas law treats new forum-selection and choice-of-law clauses as material changes. *See J.D. Fields, Inc. v. Indep. Enters., Inc.*, No. 12-2605, 2012 WL 5818229, at *7 (S.D. Tex. Nov. 13, 2012) (construing Texas law and collecting cases from other jurisdictions). And although changing the price usually alters the contract materially, it need not in

Court interprets the contract to include the new price and the new terms, except for the forum-selection and choice-of-law clauses. The same process resulted in a similar contract to pay $48,830.87 for a sleep study system at Humble Surgical Hospital, triggered by Capital Partner's August 5, 2015 Purchase Order No. 2015.503.1,[4] ECF No. 99-2, and consummated by Compumedics's September 25, 2015 Invoice No. IN89079 and November 5, 2015 Invoice No. IN89618, ECF No. 99-4. Thus Compumedics and Capital Partners contracted to exchange two sleep study systems for a combined total of $97,624.61.

Capital Partners's claimed factual disputes do not change this result. For one, it does not matter if Capital Partners received the invoices after Compumedics had already shipped the systems. Either mailing an invoice or shipping the goods was enough for Compumedics to accept the respective offer, and under the well-known mailbox rule, that acceptance became operative as soon as either took place. *See Am. Heritage Life Ins. Co. v. Koch*, 721 S.W.2d 611, 613 (Tex. App. 1986). So the corresponding contract was formed the instant Compumedics mailed the respective invoice or shipped the goods, which ever came first; when Capital Partners received the invoice is of no moment. And as § 2.207 makes obvious, the invoices' additional terms do not per se preclude acceptance. Compumedics and Capital Partners formed a valid contract.

---

cases like this one, where the change was for a relatively small amount and was favorable to the offeror. *See J.D. Fields & Co., Inc. v. U.S. Steel Int'l*, 690 F. Supp. 2d 487, 508 (S.D. Tex. 2009) (applying Texas law), *rev'd in part on other grounds*, 426 Fed. App'x 271 (5th Cir. 2011). The Court need not decide whether Compucredits's other standard terms—like the warranty disclaimer or liability limitation—materially altered the contract, since their legal operation does not impact Compumedics's motion.

[4] That purchase order followed Compumedics's July 2015 quote which expressly noted it was not an offer, alterable at will, and conditioned on credit approval. *See* ECF No. 99-15.

4

**III. Compumedics cannot establish Capital Partners breached either contract because the record does not show Compumedics fully performed.**

Though the record shows Compumedics and Capital Partners contracted, it does not indisputably show Compumedics satisfied its own obligations. To win a breach of contract claim, Compumedics must prove—along with contract formation—"that the plaintiff performed or tendered performance," "that the defendant breached the contract," and "that the plaintiff was damaged as a result of the breach." *Frost Nat'l Bank v. Burge*, 20 S.W.3d 580, 593 (Tex. App. 2000). And to prevail at the summary judgment stage, each element must be undisputed. So here, Capital Partners survives summary judgment by marshalling evidence indicating a factual dispute over Compumedics's performance.

"When the terms of a contract clearly show the intention of the parties, the courts must give effect to that intention." *Lemp v. Armengol*, 26 S.W. 941, 942 (Tex. 1894). Here, both parties clearly intended for Compumedics not just to sell both sleep study systems, but also to install them: the purchase orders and invoices show Compumedics agreed to install each system for $2060. *See* ECF Nos. 99-1–99-4. That said, neither set of documents specifies the extent of Compumedics's installation obligation, beyond making Capital Partners responsible for all in-wall cabling. But both sets show the contractual terms included some degree of installation.

Yet the record suggests Compumedics stopped well short of meaningfully installing either system. Humble Surgical Hospital's president noted Compumedics only "did a partial installation," leaving "[m]ost or much of the equipment [] still in its original box." *See* E-mail from Randy Butler to Mike Austin (Jan. 29, 2016, 4:44 PM), ECF No. 97-3. Capital Partners's president similarly attested "much of" both contracted sleep study systems were "left in [the] original box and [were] never used." *See* Michael Austin Aff. 2, ECF No. 97-2. This evidence

could allow a reasonable factfinder to conclude that Compumedics did not fully discharge its contractual obligation to install the systems—especially since Compumedics does not even attempt to argue that installation was not part of the contract, or that it should be excused from performing. So Capital Partners identifies a genuine dispute of material fact: if Compumedics didn't uphold its installation obligations, Compumedics can't hold Capital Partners liable for nonpayment.

Simply put, since the record does not establish Compumedics's total performance, summary judgment for breach of contract is inappropriate.

\*   \*   \*

In sum: the parties formed a contract, but factual disputes preclude resolving whether Compumedics totally performed. Thus the Court must deny Compumedics's motion for summary judgment. A separate order follows.

Date: March 25, 2019

*Royce C. Lamberth*

Royce C. Lamberth
United States District Judge